**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>       v.<br><br>GLEN D. BELL, JEANETTE BELL, et al.,<br><br>            Defendants. | 1:95-CV-05346 OWW SMS<br><br>ORDER GRANTING IN PART DUMAS' MOTION FOR ATTORNEY'S FEES AND COSTS (DOC. 269.) |

### I. Introduction.

Before the court for decision is Dumas International LLC's ("Dumas") motion for attorneys fees and costs. Doc. 269, filed Nov. 21, 2008. The motion was required by the district court's September 30, 2008 Order of Distribution. Doc. 267. The United States opposes the fee request in its entirety. Doc. 274, filed Dec. 23, 2008.

The underlying dispute on the merits, which was the subject of a one-day bench trial on April 25, 2008, related to the amount due under a 1984 Deed of Trust recorded against residential property previously owned by defendant taxpayers Glenn and Jeanette Bell, and the priority of that deed relative to a 1987 federal tax lien. Findings of Fact and Conclusions of Law were issued September 17, 2008, Doc. 261, as amended to correct

1

clerical and typographical errors, *see* Doc. 266, along with a Judgement of Extent and Priority of Liens, Doc. 268, filed, October 6, 2008.

## II.   FACTUAL BACKGROUND.

The Bells purchased the subject property in Modesto California in 1984.  Finding of Fact ("FOF"), Doc. 261, #9.  They subsequently obtained a construction loan in the amount of $251,000.00 from Stockton Savings, evidenced by an Adjustable Rate Note dating to 1984.  FOF #13.  In conjunction with the construction loan and Adjustable Rate Note, a First Deed of Trust was executed by the Bells and recorded in Stanislaus County, encumbering the property as security for a $310,000.00 construction note.  FOF #23.  To the extent that this First Deed of Trust secures the repayment of the construction loan, it was deemed to have priority over, as it antedated, any federal tax liens against the property, the earliest of which was recorded in 1987.  *United States v. Bell*, 27 F. Supp. 2d 1191, 1200 (E.D. Cal. 1998); FOF #30.  The exact amount due under the First Deed of Trust was not finally determined by *Bell*, 27 F. Supp. 2d 1191.

It is undisputed that Dumas, which is in the business of purchasing "troubled" properties and clearing up defective title problems, is the successor in interest to the original lender.  FOF #4.

Various estimates of the claim secured by the First Deed of Trust were elicited at trial, ranging from $251,113.00 to just over $1,034,011.00.  FOF #37, #109, Conclusions of Law ("COL")

#12.  The $1,034,011.00 figure reflected Dumas' position at trial that, in addition to the original principal balance of the construction loan, the Bells had been advanced an additional sum. FOF #45-61.  The priority of the First Deed of Trust was established in a published decision before Dumas became a party to the case.  *Bell*, 27 F. Supp. 2d at 1200.  Review of all the evidence established that Dumas' assertion that the First Deed of Trust secured unpaid principal and accrued interest of $1,034,011.00 was "not supported by the underlying evidence." COL #12.  Specifically, there was a "lack of objective evidence establishing an advance was made or when it was made."  COL #11.

Dumas also sought to estop the United States from asserting that the note balance due was less than $857,946.54, based on statements made by the United States in correspondence.  COL #16-17.  This argument was rejected on the finding that "Dumas, despite a lack of credible evidence, seeks to obtain a windfall under an estoppel theory, to recover $857,946.74 on a loan for which it paid $260,000."  COL #30.

The district court found the United States' calculation of the amount due Dumas, $449,999.46, to be consistent with the available evidence, COL #13, #44, and ruled that "Dumas shall recover $449.999.46, plus, additional interest to the date of entry of these Findings of Fact and Conclusions of Law, and attorney's fees and costs."  Doc. 261 at 44.

The United States did not object to the inclusion of an attorney's fees and costs recovery provision in the decision, as attorney's fees are authorized by the Note.

3

III.  <u>DISCUSSION</u>.

Dumas now moves for attorney's fees in the amount of $62,727.50 and costs in the amount of $14,549.00, for a total of $77,276.50.

Local Rule 54-293 governs the award of attorney fees in this District, pursuant to which a party requesting fees must show the following:

> (1) The moving party was the prevailing party;
> (2) The moving party is eligible for fees, and the basis of that eligibility;
> (3) The amount of the fees sought;
> (4) Information pertaining to the criteria considered in fixing the award; and
> (5) Other matters required by statute.

A.  <u>Legal Bases for Fee Petition</u>.

In support of its fee petition, Dumas cites 26 U.S.C. § 6323(e)(3),[1] which provides: "If [a] lien imposed by [the government for taxes] is not valid as against a lien or security interest, the priority of such lien or security interest shall extend to...(3) the reasonable expenses, including reasonable compensation for attorneys, actually incurred in collecting or enforcing the obligation secured...."

---

[1] In headings in its motion for attorney's fees, Dumas refers to 42 U.S.C. § 1988, which permits awards of attorney's fees to prevailing civil rights plaintiffs. Section 1988 is inapplicable to this case concerning the priority of a lien relative to a government tax lien. Dumas also invokes the appropriate statute: 26 U.S.C. § 6323(e)(3).

The Adjustable Rate Note contained an attorney's fee provision, whereby the lender shall be reimbursed for all its "costs and expenses" incurred in obtaining repayment of the loan: "If the Note Holder has required me to pay immediately in full as described above [for being in default], the Note Holder will have the right to be paid back by me for all its costs and expenses not prohibited by applicable law.  Those expenses include, for example, reasonable attorney's fees."  Ex. 3 at ¶7(e).

The Deed of Trust also contained an "attorneys fees" provision that entitles the lender to make disbursements for "reasonable attorneys fees" in the event the borrower fails to make required payments under the Adjustable Rate Note.  Ex. 4 at ¶7.  Such fees "become additional indebtedness" of the borrower, and bear interest at the rate set in the overlying promissory note.  *Id*.

Under California law, when a trust deed provides for attorney's fees, a beneficiary is entitled to recover such fees that are incurred to protect and enforce his or her secured obligation, and such award has equal priority status with principal amount of the deed of trust.  *Wutze v. Bill Reid Painting Serv., Inc.*, 151 Cal. App. 3d 36, 46 (1984).

B.   Prevailing Party Requirement

Dumas argues that by virtue of its status as successor-in-interest to Guarantee Bank (and its predecessor Stockton Savings), it is entitled to collect attorney's fees and costs incurred in this litigation.

The United States does not dispute that a prevailing party

in a dispute over the amount and priority of a lien is entitled to collect fees and costs.  The United States maintains, however, that Dumas incurred its fees pursuing the theory upon which it did **not** prevail, namely that a large sum should be added to the principal balance to reflect an advance given to the Bells by their lender.  Only fees "actually incurred in collecting or enforcing the obligation secured" are permitted a priority under 26 U.S.C. § 6323(e)(3).  The United States points out that, apart from the "loan advance" theory, the respective experts very nearly agreed on the balance due on the loan.

Dumas sought at trial an award of $1,034,011.00 but eventually obtained a judgment for $455,936.52, less than half of the award sought.  Critically, the United States asserts that the "priority of the judgment actually obtained was stipulated by the parties before Dumas entered the case."  Doc. 274 at 4.  Although it is undisputed that the **priority** of the existing lien was established well before Dumas became a party, *Bell*, 27 F. Supp. 2d at 1200, the United States has not pointed to any evidence of a stipulation as to the **amount due** under the First Deed of Trust.[2]

---

[2] Dumas points out that under Rule 68 of the Federal Rules of Civil Procedure, the United States could have offered a settlement just prior to trial, which would have shifted the burden to pay for costs to Dumas. Fed. R. Civ. P. 68 ("If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."). Dumas incorrectly suggests that Rule 68 would also have shifted the burden of paying for attorney's fees to Plaintiff. In *Marek v. Chesney*, 473 U.S. 1, 9 (1985), the Supreme Court held that the term "costs" under Rule 68 includes attorney's fees whenever the underlying statute that

Dumas maintains that the amount due under the First Deed of Trust was <u>disputed</u> by the United States. In large part, this dispute arose from the existence of two separately dated residential mortgage loan statements from December 2003. The first mortgage statement, referencing Loan. No. 72888-00527-001, dated December 9, 2003, reflects a principal balance due of $251,112.49 and a past due balance of $60,692.00, while the second statement, referencing Loan. No. 72888-00527-001 ADV, dated December 15, 2003, reflects a principal balance due of $328.726.76 and a past-due balance of $462,826.85. The original statements were introduced into evidence, together with the mailing envelopes and testimony suggesting that the two separate loan transactions were both secured under the First Deed of Trust. However, the evidence did not support including the advance sum in the award to Dumas. Dumas did <u>not</u> prevail on its theory that the advance should be added to the amounts secured by First Deed of Trust.

Absent evidence of a Rule 68 offer prior to trial or a stipulation that the amount actually recovered was never in dispute, Dumas did obtain a substantial judgment in its favor. Dumas had the burden of proof to show the amount due under the lien and, at least in part, satisfied that burden. "[P]laintiffs

---

provides for attorney's fees expressly includes such fees as "costs." Here, the applicable statute, 26 U.S.C. 6323(e) does not do so, instead providing that the priority of an antecedent lien shall extend to "the reasonable expenses, including reasonable compensation for attorneys, actually incurred in collecting or enforcing the obligation secured...." § 6323(e)(3).

7

may be considered 'prevailing parties' for attorneys fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Dumas is a prevailing party.

### C.   Adjustment of Fee Award to Reflect Partial Success.

The district court has discretion to reduce the amount of a fee award to reflect the partial success of the party requesting fees. *See LeMaire v. Maass*, 12 F.3d 1444, 1461 (9th Cir. 1993) (in a section 1988 action, district court may determine extent to which a plaintiff prevailed and adjust fee accordingly without regard to any precise formula). *Nat'l Equip. Rental Ltd. v. United States*, 1978 WL 4590, *4 (C.D. Cal., Sept. 13 1978) is the only case, an unpublished decision, that discusses adjustment of fee awards to reflect partial success in the context of 26 U.S.C. § 6323. In that case, a creditor prevailed as to approximately two-thirds of its lien, and the district court awarded the creditor only two-thirds of its requested fees. *Id*.

Here, the United States argues it would not be reasonable to award Dumas even one-half of its fees and costs request because, "[a]lthough it prevailed on approximately half of its lien claim, the documented portion of the lien was never opposed by the United States and it was fully litigated before Dumas ever obtained an interest or became a party." Doc. 274 at 6. As discussed above, this is not an entirely accurate description of Dumas' burden at trial. Absent evidence of a stipulation as to the amount actually awarded, Dumas bore the burden of proving the

amount due under the lien.

A large portion of the evidence, roughly sixty (60) percent, presented by Dumas during the bench trial concerned theories upon which it did not prevail. This is evidenced by, among other things, the exhibits admitted into evidence, most of which concerned Dumas' attempt to prove up its loan advance theory. *See* Doc. 261 at 2-3. A review of counsel's billing records also reveals an emphasis during trial preparation on discussions with the expert witness, who testified almost exclusively as to theories upon which Dumas was unsuccessful. *See* Doc. 270. Accordingly, it is appropriate to award Dumas 40% of its attorney's fees request based on limited success. The final Lodestar calculation will be adjusted accordingly.

D. Lodestar Calculation.

The basic fee, or "lodestar," is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 982 (9th Cir. 2008). The prevailing party has the burden of documenting the hours expended and submitting evidence in support of the hours worked. *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992). "It is an abuse of discretion for the court to award fees for hours that are not properly documented." *Stewart v. Gates*, 987 F.2d 1450, 1453 (9th Cir. 1993). Hours that are "excessive, redundant, or otherwise unnecessary" are to be excluded from the fee request. *Id*. at 1452. The reasonable hourly rate typically is based on "prevailing market rate[s] in the community" for similar work. *Jordan v. Multnomah County*, 815

F.2d 1258, 1262 (9th Cir. 1987).

The Declaration of Frank T. Zumwalt, of The Zumwalt Law Firm, APC, of Modesto California, explains that he spent a total of 228 hours on this litigation, for which he charged Dumas $300.00 per hour. Doc. 270. He was assisted by Mr. John J. Hollenback, who spent 18.7 hours on the case, for which he charged his normal hourly rate of $325.00. In addition, paralegals at the Zumwalt Firm spent 50 hours on this case, for which Dumas was charged $65.00 per hour. The total fee request, based on the time spent and hourly rates, is $62,727.50.

The hourly rates charged by Dumas' attorneys are reasonable and well within prevailing hourly rates for attorneys before the court in the field of debt collection and real estate security transactions. *See* Doc. 371, Decl. of M. Jensen.

The time expended in representing Dumas' interest in this case, approximately 250 hours over 2 years of litigation, including a one-day bench trial, after adjustment for Dumas' partial success, were reasonably expended to protect its lien. "A strong presumption exists that the lodestar figure represents a reasonable fee." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000).

### E. Costs Bill.

The district court has also reviewed the Costs Bill, which requests a total of $14,549.00, $13,851.00 of which is expert witness fees due Richard Goldstein, who testified at length at trial about the Advance Loan. Doc. 272. His opinions were not adopted by the district court. Defendant did not prevail on the

10

theory advanced by Mr. Goldstein, whose testimony the court found not to be helpful. The principles underlying Defendants' calculation of interest and unpaid balance under the promissory note were neither hard nor complex. Mr. Goldstein introduced theories about fixing the unpaid balance that were legal conclusions and not helpful to the court as the trier of fact. Moreover, "[a]bsent express statutory authority for shifting expert witness fees, reimbursement for such fees is limited by [Title 28, United States Code] §§ 1821(b) and 1920(3)." Here, the applicable fee statute, 26 U.S.C. § 6323, makes no specific mention of expert witness fees. Expert witness fees are not recoverable. Accordingly, the only costs taxable for Mr. Goldstein's services is a $40.00 per day fee, afforded witnesses under 28 U.S.C. § 1821(b), for each day's attendance in court or at a deposition. He attended one day of trial, entitling Defendant to $40.00 in witness fees.

//
//
//
//
//
//
//
//
//
//
//
//

1  The remaining portions of the cost request ($7.00 for
2  recorder's office fees; $475.00 for court reporter's fees; and
3  $216.00 for process server fees) are reasonable and necessary.
4  Along with the $40.00 in non-expert witness fees, the costs award
5  totals $738.00.

## IV.   CONCLUSION

For the reasons set forth above, Dumas' request for attorneys' fees and costs is granted in part.  Defendants' shall recover forty (40%) of its $62,727.50 attorney's fee request, or $25,091.00 and $738.00 in costs, for a total award of $25,829.00.

SO ORDERED

DATED: January 15, 2009

                                       /s/ Oliver W. Wanger
                                       Oliver W. Wanger
                                       United States District Judge